IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DALE RICHMOND                                                                                      PLAINTIFF

v.                                     Case No. 5:06-cv-5084

MICHAEL J. ASTRUE,[1] Commissioner                                              DEFENDANT
Social Security Administration

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Dale Richmond, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability, disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act), and supplemental security income (SSI) benefits under the provisions of Title XVI of the Social Security Act (Act).

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2005), the Honorable Jimm L. Hendren referred this case the Honorable Barry A. Bryant for the purpose of making a report and recommendation. The Court, having reviewed the entire transcript and relevant briefing, recommends that the Administrative Law Judge's (ALJ) determination be **AFFIRMED**.

**1. Procedural Background:**

Plaintiff filed his applications for DIB and SSI on February 12, 2004, alleging an onset date

---

[1] Michael J. Astrue became the Social Security Commissioner on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for acting Commissioner Jo Anne B. Barnhart as the defendant in this suit.

of June 5, 2000. (Tr. 45, 49).[2] Plaintiff's impairments included back pain and fibromyalgia. (Tr. 49, 211-212, 217). Plaintiff's applications were denied initially and on reconsideration. (Tr.19, 21, 185, 190). Pursuant to Plaintiff's request, a hearing before an Administrative Law Judge (ALJ) was held on August 23, 2005. The Plaintiff was present and represented by counsel, Mildred M. Cozart, at the hearing. Also testifying was, Dale Thomas, a vocational expert (VE). (Tr. 194-235). After considering all of the evidence of record, the ALJ rendered a decision on December 9, 2005, finding the Plaintiff was not disabled within meaning of the Act at anytime during the relevant time period. (Tr.10-16). The decision of the ALJ became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on March 24, 2006. (Tr. 2-4). The Plaintiff and Defendant have filed appeal briefs and this matter is ready for decision.

**2. Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2007); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible

---

[2] The docket numbers for this case are referenced by the designation "Doc. No." The transcript pages for this case are referenced by the designation "Tr."

to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f) (2003). The fact finder only

considers the Plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

**3.  Discussion:**

The Plaintiff appealed the decision of the Commissioner finding him not disabled. He claims the ALJ's findings are not supported by substantial evidence in the record because the ALJ allowed the VE's testimony to constitute substantial evidence and alleges the ALJ erred when he found Plaintiff failed to produce objective medical evidence to sustain his claims of limitations. The Defendant argues the ALJ's decision is supported by substantial evidence.

When Defendant filed his appeal brief (Doc. No. 7), Plaintiff had yet to file an appeal brief and Plaintiff's deadline to do so had passed. Plaintiff thereafter filed a Motion to Continue the time to file a brief. (Doc. No. 8). This Motion was granted on January 23, 2007. (Doc. No. 9). The Court will review the entire transcript and the briefing in this case in order to determine whether there is substantial evidence in the record to support the ALJ's disability determination. *See* 42 U.S.C. § 405(g). If there is substantial evidence in the record to support the ALJ's disability determination, then the decision of the ALJ must be affirmed. *See id.*

In this case, The ALJ properly set forth the five step evaluation that must be performed to determine whether a claimant is disabled. (Tr. 11). The ALJ then discussed and applied this sequential evaluation in arriving at his decision and findings. (Tr. 11-16).

In step one, a determination is made  whether Plaintiff engaged in substantial gainful activity (SGA) during the alleged disability period. SGA is defined as work that involves doing significant physical or mental activity. *See* 20 C.F.R. §§ 404.1572 and 416.972. Substantial evidence supports

the ALJ's determination that Plaintiff did not engage in SGA at any time since the alleged onset date of June 5, 2000.

If a claimant is not engaged in SGA, the ALJ must next determine whether the Plaintiff has a severe impairment that significantly limits the physical or mental ability to perform basic work activities. A medically determinable impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521 and 416.921. The record medical evidence shows Plaintiff did suffer from impairments considered to be severe within the meaning of the social security regulations. These impairments included back pain and fibromylagia. (Tr. 49, 211-212.). However, there was no substantial evidence in the record showing Plaintiff's condition severe enough to meet or equal that of a listed impairment as set forth in the Listing of Impairments. *See* 20 C.F.R. pt. 404, subpt. P, app.1. Plaintiff has the burden of establishing that his impairment(s) meet or equal an impairment set out in the Listing of Impairments. *See Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990).

Since the medical evidence indicates the Plaintiff had an impairment considered severe, but not severe enough to meet or medically equal one of the impairments set forth in the Listing of Impairments, the ALJ must then determine whether Plaintiff retained the Residual Functional Capacity (RFC) to perform the requirements of his past relevant work (PRW) or other work existing in significant numbers in the national economy. RFC is defined as the most an individual can still do after considering the physical and medical limitations that affect Plaintiff's ability to perform work related activities. *See* 20 C.F.R. §§ 404.1545 and 416.945.

In making this RFC finding, the ALJ must consider the medical evidence and the credibility

of Plaintiff's subjective complaints of limitation. In assessing the credibility of a claimant, the ALJ is required to examine and apply the five factors from *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984). These five *Polaski* factors must be analyzed in light of the claimant's subjective complaints of pain and discomfort. The factors are: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *See id.* at 1322. The ALJ is not required to methodically discuss each *Polaski* factor as long as the ALJ acknowledges and examines those factors before discounting the subjective complaints of the claimant. *See Lowe v. Apfel,* 226 F.3d 969, 371-72 (8th Cir. 2000).

When discounting a claimant's complaint of pain, the ALJ must make a specific credibility determination, articulating the reasons for discrediting the testimony, addressing any inconsistencies, and discussing the *Polaski* factors. *See Baker v. Apfel,* 159 F.3d 1140, 1144 (8th Cir. 1998). The inability to work without some pain or discomfort is not a sufficient reason to find a Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain a Plaintiff experiences precludes the performance of substantial gainful activity. *See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991). The lack of objective medical evidence in support of Plaintiff's subjective complaints is one important factor, out of many, for consideration by the ALJ when evaluating Plaintiff's allegations of disabling symptoms. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999); *Brown v. Chater*, 87 F.3d 963, 964 (8th Cir. 1996).

In this case, the ALJ did not simply discredit Plaintiff's subjective complaints without explanation. The ALJ applied the factors enumerated in *Polaski*, and determined based upon the record as a whole, that Plaintiff's complaints were not credible to the extent alleged.

In evaluating Plaintiff's credibility, the ALJ reviewed the medical evidence. (Tr. 12-14). In reviewing the medical evidence, the ALJ considered the treatment provided Plaintiff by Dr. Robert Hoffman, M.D., for a work-related injury. (Tr. 137- 144). Plaintiff was first seen by Dr. Hoffman on October 14, 1997, after he jerked his head back to avoid a feeder and hit his wrist on a pipe. (Tr. 139, 142-144). The initial diagnosis was intervertebral disc disorder with myelopathy. A follow-up examination on December 11, 1997, indicated Plaintiff's left arm pain had greatly improved, but he still had neck pain with movement. (Tr. 138, 140). The final treatment record of January 19, 1998, indicated Plaintiff was much improved with increased cervical range of movement without much pain, and no sensory or motor loss. (Tr. 137).

On October 7, 1999, Plaintiff was seen by Marcus Poemoceah, M.D., with complaints of low back pain radiating down both legs. (Tr. 117). Plaintiff's straight leg raising was negative and range of motion was intact. (Tr. 117). The diagnosis from Dr. Poemoceah was muscle strain and probable degenerative disc disease. (Tr. 117). Plaintiff was prescribed a nonsteriodal anti-inflammatory drug in addition to his anti-hypertensive medication. (Tr. 117).

The medical record evidence also shows that Plaintiff injured his right arm on November 16, 1999. (Tr. 168). Plaintiff was evaluated by Dr. Robert Tomlinson, M.D., on November 17, 1999. (Tr. 168). Dr. Tomlinson felt Plaintiff had ruptured his right distal bicep at the elbow and it needed to be reattached. (Tr. 168- 169). On November 23, 1999, Plaintiff underwent surgical repair of his right bicep. (Tr. 162-163). A follow-up examination on December 1, 1999, indicated Plaintiff was healing well, but he was experiencing some numbness in his right hand. (Tr. 161).

Dr. Tomlinson recommended an electromyography ( EMG) and nerve conduction velocity

study (NCS) of the upper extremities.  (Tr. 158).  On January 4, 2000, Plaintiff underwent EMG/NCS with Dr. Miles M. Johnson. (Tr. 154).  Plaintiff's motor examination was grossly intact in his upper extremities, with some weakness of the right elbow.  (Tr. 154).  A sensory examination revealed decreased sensation to light touch on Plaintiff's right hand at the first and second digits.  (Tr. 155).  Dr. Johnson stated that the electrodiagnostic studies were consistent with a diagnosis of a right radial sensory neuropathy.  (Tr. 155).  However, there was no electro-diagnostic evidence to suggest the presence of generalized peripheral neuropathy or other peripheral nerve entrapment syndromes or injuries.  (Tr. 155).

According to Plaintiff, Dr. David Tucker was his treating and family physician.  (Tr. 215).  On February 28, 2000, Plaintiff was seen by Dr. Tucker for an ear infection and problems with low back pain.  (Tr. 116).   Plaintiff was last treated by Dr. Tucker on June 7, 2000, for  complaints of diffuse aches, myalgias, arthralgias, and severe pain to the point where he quit his job.  (Tr. 115).  Dr. Tucker's physical examination on that date, revealed no evidence of joint swelling or effusion.  (Tr. 115).  Plaintiff also had  full range of joint motion.  (Tr. 115).  There was evidence of diffuse tenderness in multiple muscle areas, and a "checklist" for fibromyalgia was markedly positive.  (Tr. 115).  X-rays of Plaintiff's cervical spine showed only a mild amount of degenerative disc disease.  (Tr. 115).  Dr. Tucker's diagnosis was probable fibromyalgia.  (Tr. 115).

Although Dr. Tucker's diagnosis was probable fibromyalgia, a diagnosis is not disabling *per se* and there must be a functional loss establishing an inability to engage in substantial gainful activity before a disability occurs. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990).  Dr. Tucker did not place any functional limitations on Plaintiff.  (Tr. 115).  The absence of limitations placed on a plaintiff's activities by his doctors is inconsistent with claims of disability.  *See Hensley*

*v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003).

There was no evidence of medical treatment for Plaintiff regarding his last visit with Dr. Tucker in June 2000, until he had x-rays taken almost four years later. The Eight Circuit has held that an ALJ may discount subjective complaints based upon a failure to pursue regular medical treatment. *See Edwards v. Barnhart*, 314 F. 3d 964, 967 (8th Cir. 2003).

A radiology report dated April, 12, 2004 showed mild degenerative changes of the lumbar spine, but no evidence of acute injury involving the cervical spine, with minimal to mild degenerative changes present. (Tr. 112). On April 14, 2004, Plaintiff underwent an consultative physical examination with Dr. Tad Morgan. (Tr. 119). The examination of Plaintiff's neck, lungs, and abdomen was normal. (Tr. 121- 122). The orthopaedic examination revealed normal cervical and lumbar spinal ranges of motion and no evidence of muscle spasm. (Tr. 122). The examination of Plaintiff's shoulders, elbows, wrists, hands, hips, knees, and ankles also had normal ranges of motion with no evidence of instability. (Tr. 122-123). Plaintiff's neurological examination was normal with no evidence of muscle weakness, atrophy, or sensory abnormality. (Tr. 123). Dr. Morgan stated Plaintiff had a mild limitation on walking and standing, for prolonged periods of time, because this would increase his pain symptoms. Dr. Morgan also indicated Plaintiff had a 25 pound limit on lifting and carrying in order to avoid increasing Plaintiff's joint pain. (Tr. 125).

On January 5, 2005, Plaintiff underwent a consultative physical examination with Dr. Donald Leonard, a rheumatologist and internist specialist. (Tr. 145). The examination showed Plaintiff had normal cervical and lumbar spinal ranges of motion with no evidence of joint inflammation of the hands, knees, or feet. (Tr. 145). Plaintiff also had good ranges of motion of his peripheral limb

joints. (Tr. 145). In a supplemental report dated January 28, 2005, Dr. Leonard reported that Plaintiff's lab results revealed a normal serum uric acid, normal sedimentation rate, negative (normal) rheumatoid factor and anti-nuclear antibody tests, and a normal complete blood count. (Tr. 147). Dr. Leonard was of the opinion that Plaintiff, had a totally normal examination and laboratory studies and appeared to be one of the rare male claimants with fibromyalgia. Dr. Leonard also indicated Plaintiff probably would be able to hold down gainful employment. (Tr. 147).

Dr. Leonard completed a form entitled Medical Assessment of Ability to Perform Work-Related Activities (Physical). (Tr. 150). Dr. Leonard stated that Plaintiff could never lift 51 to 100 pounds, but could occasionally lift 20 to 50 pounds and frequently lift up to 20 pounds. (Tr. 150). Dr. Leonard also found Plaintiff had the capacity to sit, stand, and walk for seven to eight hours out of an eight-hour workday. (Tr. 150). Additionally, Plaintiff was not limited in his ability to use his hands, feet, and arms for simple grasping, fine manipulation, handling objects, feeling objects, reaching, as well as pushing, pulling, and operating controls. (Tr. 150). Dr. Leonard also concluded that Plaintiff could occasionally climb, balance, stoop, crouch, kneel, and crawl. (Tr. 150). Finally, Dr. Leonard found no environmental or communicative limitations on Plaintiff's ability to work. (Tr. 150).

The RFC determination is what a plaintiff can still do despite the limitations and restrictions caused by his medically determinable impairments. This RFC determination is based upon all the relevant evidence including medical records, observations of treating physicians and others, as well as plaintiff's own descriptions of his limitations. *See Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003). It is the plaintiff's burden, not the Commissioner's burden, to prove his RFC. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

Here, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to lift and/or carry 25 pounds frequently, 50 pounds occasionally, and to push and/or pull the same amounts of weight. (Tr. 16). Further, the ALJ found that Plaintiff was able to sit for a total of six hours and stand and/or walk for a total of six hours each during an eight-hour workday. (Tr. 16). Finally, the ALJ concluded that Plaintiff could occasionally climb, balance, stoop, crouch, kneel, and crawl (Tr.16). Substantial evidence, including medical evidence, supports this finding.

Vocational expert testimony is not required at step four of the sequential evaluation. *See Lewis v. Barnhart*, 353 F.3d 642, 648 (8th Cir. 2003); *Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir. 2001). However, vocational expert testimony may be used to show that a Plaintiff can perform his past relevant work. *See Depover v. Barnhart*, 349 F.3d at 567. In this matter, the ALJ properly relied on the vocational expert's testimony to find that Plaintiff was not disabled because he could perform his past relevant work. (Tr. 14-15).

Vocational expert, Dale Thomas testified at the administrative hearing. (Tr. 17-18, 37-39). He described Plaintiff's past relevant work as a foreman at a cattle ranch and ranch cowboy at the light and skilled level; a feed mill cleanup worker at the medium and unskilled level; and a line worker at a poultry processing plant at the light and unskilled level. (Tr. 15, 210). The vocational expert testified that Plaintiff could still perform his past relevant work at the limited light exertional level, except for the job of cleanup worker. (Tr. 232).

Based upon Plaintiff's RFC and vocational expert testimony, the ALJ found that Plaintiff could still perform his past relevant work as a foreman at a cattle ranch and ranch cowboy, line worker at a poultry processing plant, and feed mill cleanup worker as he performed it and as generally performed in the national economy. (Tr. 15). As a result, Plaintiff was not disabled under

the Act. (Tr. 16).

**4. Conclusion:**

It is the Plaintiff's burden to establish that he is disabled. *See Cox v. Apfel*, 160 F.3d at 1206. This Court has reviewed all of the relevant medical records and briefing in the case, and the Plaintiff has not met this burden. Accordingly, after a careful review of the entire record, this Court finds there is substantial evidence to support the decision of the ALJ. It is therefore recommended that the Commissioner's decision be affirmed, and the Plaintiff's complaint dismissed with prejudice.

**Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.** *See* **28 U.S.C. § 636(b)(1)(C). Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days after service shall bar an aggrieved party from** *de novo* **review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the court except on grounds of plain error or manifest injustice.**

**ENTERED** this **31ˢᵗ** d**ay of May, 2007.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE